SCHULMAN, APPELLANT, *v.* VILLENSKY, APPELLEE.

(No. 8257—Decided April 29, 1957.)

*Mr. Leslie D. Stickler* and *Mr. Otto F. Putnick,* for appellant.

*Messrs. Goodman & Goodman* and *Mr. Albert L. Weinstein,* for appellee.

*Per Curiam.* This is an action to set aside a deed on the ground that its execution and delivery were induced by fraud. At the conclusion of the trial, the court found for the defendant and dismissed the action. The cause is in this court for review on law only on the plaintiff's appeal.

It appears from the record that Abe Villensky by his labor earned money, and that by frugal living he and his wife, Bess Villensky, accumulated some wealth consisting largely of real estate situated in Cincinnati, Hamilton County, Ohio, the record title to which was in the name of Bess Villensky at the time of her death on May 21, 1952. They had two daughters. Both survived the wife as did her husband. One daughter, plaintiff in this case, lacked about six months of being 21 years old at the time of her mother's death. The other daughter was more than 21 years old.

The record leaves no doubt that this real estate was community property, and that both husband and wife treated it as such and attempted to have it devolve upon death as such property would devolve. This attempt was in the form of mutual wills, but because of a mistake each executed the will intended to be executed by the other, and upon an examination of the will after the death of the wife this mistake was discovered, and the intestacy of Bess Villensky and the fact that the real estate would descend to the father and daughters in equal shares were disclosed.

This situation was revealed to the two daughters and their husbands by the father. They had come to Cincinnati from distant homes to assist in caring for their mother during her sickness. A general desire to take action to give effect to the provisions of the ineffective will so that the father would have the property, as though said instrument had been properly executed, was expressed by the daughters. Accordingly, a deed

conveying all the right, title, and interest of the daughters in the real estate was duly executed by them and their husbands. The death of Bess Villensky, the discovery of the mistake in the execution of the will, and the execution of the deed all took place within a period of three days. The haste, it seems, resulted from the facts that all interested persons were present, the daughters and their husbands desired to return home at once, and the parties could not reassemble without labor and expense.

The deed was held by the attorney for the father for about four months before it was presented for record. In the meantime, administration of the estate of Bess Villensky as an intestate was proceeded with, Abe Villensky was appointed administrator, and at the end of the four-month period an application to authorize the transfer of the title from Bess Villensky to her heirs was filed and an order made authorizing the transfer. Shortly thereafter, the deed executed by the daughters and their husbands was recorded.

The deed as recorded contains a recital that the daughters had inherited their title from their mother, and in the recital there is a reference to the number of the estate. As administration of the estate had not been started at the time of the execution of the deed, it is urged that this shows that the deed was altered by the grantee after its execution, and that this rendered the deed totally void.

We do not consider the extent of any alteration in the deed after its execution. It is manifest that the estate number was inserted after the deed was executed. Whether the rest was interpolated afterward is not so clear. However, the whole controverted paragraph does not have any effect whatsoever upon the deed as a conveyance. It is no more than a statement of the legal effect of the remaining provisions of the deed.

Not every alteration of or interpolation in an instrument will invalidate it. In 2 American Jurisprudence, 598, 599, Section 6, it is said upon this subject that "it is now well settled as a general rule in practically all the jurisdictions in the United States as well as in England, that an alteration, in order to have vitiating effect, must be material, or, stated conversely, that an immaterial alteration of an instrument does not affect

its validity." And, in Section 7, page 599, *ibid.*, a material alteration is said to be any alteration "which so changes its [the instrument's] terms as to give it a different legal effect from that which it originally had, and thus works some change in the rights, obligations, interest, or relations of the parties." Tested by this rule, the change here, if any, is immaterial.

Next, it is contended that this deed must be set aside because it was induced by the fraud, actual or constructive, of the father.

Upon the subject of actual fraud, we observe that a reading of this record leads us to the conclusion that the preponderance of the evidence discloses freedom from actual fraud. It is claimed that the father represented that there existed a valid will of Bess Villensky, and that this deed was executed to make it easy to give effect to the terms of the will. We think the circumstances point to the contrary, and that the parties knew both instruments were ineffective as wills. But, however that may be, we are convinced that there is abundant evidence to support the finding of the trial court, and that this court would not be justified in disturbing its finding. It is contended, however, that the relation of father and daughter is confidential, and that a presumption of fraud arises. We do not understand that the mere relationship of parent and child debars the former from accepting a gratuity from the latter. We do not understand that the relation raises a presumption of actual fraud. In 39 American Jurisprudence, 747, Section 101, it is said:

"Indeed, to consider a parent disqualified to take a voluntary deed from his child without consideration, on account of their relationship, is assuming a principle at war with all filial as well as parental duty and affection, and acting on the presumption that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child; whereas the presumption ought to be, in the absence of all proof tending to a contrary conclusion, that the advancement of the interest of the child was the object in view, and that circumstances existed conducing to that result."

Finally, it is urged that because the plaintiff, Mrs. Schulman, was not 21 years old when she executed this deed she had a right to disaffirm it upon reaching the age of 21 years.

It is true that plaintiff was under 21 years of age, but that is not conclusive of her incapacity to bind herself. She was married and had established a relation that transcended her relation to her parents. In 67 Corpus Juris Secundum, 816, Section 89, it is said that, ''as a general rule, marriage of a child effects its emancipation.'' It seems to us that this is especially true where the act which is sought to be disaffirmed is the joint act of the husband and wife.

Furthermore, this whole transaction was approved and ratified after Mrs. Schulman had reached 21 years of age. In her letter to her father of May 25, 1953, she said: ''Naturally Bernard and I have talked it over and we both believe then and now that there wasn't anything forced or otherwise about signing the 'quick' claim deed when mother passed away. We know that you both worked very hard for what you have and there never was any other thought in my mind but that it was yours and whatever you did about your children was your affair.''

In 27 American Jurisprudence, 804, Section 76, we find it stated on the subject of ratification by an infant:

''While ratification is, generally speaking, a matter of intention, the purpose to ratify need not be expressly declared, but may be inferred from words or acts. Any act which creates a clear implication of intention to ratify the contract constitutes a ratification. Such intent or purpose may be, and ordinarily is, inferred from the free and voluntary acts of the party to be charged, although he may not have in mind any definite intent or purpose to ratify.''

It seems that this letter clearly constituted a ratification.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., MATTHEWS and LONG, JJ., concur.